IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DARRELL J. AUSTIN, JR.,

    Plaintiff,

v.                      Civil Action No. 3:22cv707

EQUIFAX INFORMATION SERVICES,
LLC, et al.,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT EXPERIAN INFORMATION SERVICES, INC.'S MOTION TO COMPEL ARBITRATION (ECF No. 38). For the following reasons, the motion will be denied.

### BACKGROUND

Darrell J. Austin, Jr. ("Austin") filed the COMPLAINT herein (ECF No. 1) alleging violations of the Fair Credit Reporting Act ("FCRA"). (ECF No. 1) Specifically, Austin alleged that:

(1)    Defendants Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union"), violated 15 U.S.C. § 1681e(b) "by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of consumer reports they each

furnished and maintained concerning" Austin, (COMPLAINT, ECF No. 1, COUNT ONE) and that, as a result, they improperly reported on Austin's credit record an unsecured debt that was discharged in Austin's bankruptcy; and

(2) Equifax, Experian, and Trans Union violated 15 U.S.C. § 1681i(a) "by failing to conduct reasonable reinvestigations to determine whether the disputed information was inaccurate and record the current status of the disputed information or delete the item from Plaintiff's credit file" and "by failing to conduct any reinvestigation at all" respecting Austin's dispute (thereby violating 15 U.S.C. § 168i(a)(1)) and "by failing to review and consider all relevant information" that Austin submitted (thereby violating 15 U.S.C. § 1681i(a)(4)) and "by failing to promptly delete the dispute inaccurate items of information from Plaintiff's credit file or modify the terms of information upon a lawful reinvestigation," (thereby violating 15 U.S.C. § 1681i(a)(6)) (reporting derogatory information regarding an

auto loan during the pendency of Austin's bankruptcy) (COMPLAINT, ECF NO. 1, COUNT TWO).[1]

By May 2023, Austin had settled the claims against Trans Union, Equifax, VACU, and RVA. (See ECF Nos. 84, 89, 90, and 98.) The sole remaining claims are those against Experian.

After filing its Answer (ECF No. 31), Experian filed EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION (ECF No. 38) (the "MOTION TO COMPEL"). In its memorandum in support of the MOTION TO COMPEL (ECF No. 39), Experian made the following arguments.

First, Experian argued that a valid arbitration agreement existed because Austin had signed up online for CreditWorks, an Experian "affiliate," starting a "credit monitoring membership." (ECF No. 39 at 6-7) In so doing, according to Experian, Austin had agreed to certain Terms of Use, which contained an arbitration agreement. Id. Second, Experian argued that it (a non-party to the agreement that Austin is said to have made with CreditWorks) could directly enforce that agreement because the Terms of Use explicitly grouped in Experian as an affiliate of CreditWorks, thereby including Experian in the agreement and

---

[1] Austin also alleged that the Virginia Credit Union, Inc. ("VACU") and RVA Financial Federal Credit Union ("RVA") violated 15 U.S.C. § 1681s-2(b)(1) (A, B and E) in various ways and by violating 15 U.S.C. § 1681s-2(b)(1) (COMPLAINT, ECF No. 1, COUNT THREE).

enabling Experian to enforce it. Id. at 7-11. Third, Experian argued that, in the alternative, Experian was at the very least a third-party beneficiary of the arbitration agreement, and was entitled to enforce its terms on those grounds. Id. at 12-16.

The MOTION TO COMPEL relied entirely on the Declaration of David Williams (the "Williams Affidavit") (ECF No. 39-1). According to the Williams Affidavit, Williams is "the VP, Business Governance for ConsumerInfo.com, Inc.," doing business as Experian Consumer Services, another Experian affiliate. Id. at ¶ 1. Therefore, according to Williams, he had "personal knowledge . . . through the review of pertinent documents . . . relating to sales of [ConsumerInfo.com's] credit products and services," which allegedly included CreditWorks. Id. at ¶¶ 1, 8. The Williams Affidavit included attachments of screenshots of the CreditWorks sign-on process, purporting to bolster the text of the Williams Affidavit and, in turn, the MOTION TO COMPEL. (ECF No. 39-1) By referring to the screenshots of the CreditWorks sign-on process, Williams averred that: (1) Austin would have seen the Terms of Use; (2) Austin would have clicked that he agreed to the Terms of Use; (3) the Terms of Use applied to Experian; and (4) the Terms of Use included the agreement to arbitrate. Id. at ¶¶ 3-8.

Specifically, Williams asserted the following about what Austin allegedly did when he signed up for CreditWorks:

4

> The phrase 'Terms of Use Agreement' in the disclosure was off-set in blue text and, *if clicked, would have presented the consumer with the full text of the agreement*. That is, the phrase 'Terms of Use Agreement' in the disclosure was a full text hyperlink to the Terms of Use. Thus, before clicking the 'Create Your Account' button, the consumer could view the entire text of the Terms of Use Agreement by clicking on the blue-highlighted hyperlink 'Terms of Use Agreement.' When a consumer clicked on the 'Terms of Use Agreement' hyperlink, an additional window would open within the consumer's web browser containing the entire text of the Terms of Use Agreement. Immediately below the disclosure was a large purple button that reads: 'Create Your Account.' The webform, the disclosure, and the 'Create Your Account' button appeared on a single webpage.

Id. at ¶ 4 (emphasis added). Notably, Williams did not assert that Williams would have *had* to click the Terms of Use Agreement in order to proceed.

Williams also represented that he had personal knowledge of what was set out in the Williams Affidavit. To establish his putative personal knowledge, Williams said:

> I am the VP, Business Governance for ConsumerInfo.com Inc. ('CIC') in Costa Mesa, California. CIC also does business as Experian Consumer Services ('ECS').
>
> * * *
>
> My duties at CIC throughout the course of my employment require that I be familiar with, among other things, the marketing, advertising and sales of CIC consumer credit products, including services that consumer enroll in at Experian websites, as well as

the Terms of Use governing such services. Except where otherwise stated, the facts stated in this Declaration are of my own personal knowledge, including knowledge acquired in the course and scope of my job responsibilities and through the review of pertinent documents maintained as business records by CIC in the course and scope of CIC's business, documents relating to CIC's internet advertising, and documents relating to sales of CIC's credit products and services. If called upon to do so, I could and would competently testify to the facts stated below.

The Williams Affidavit mentions CreditWorks and its computer sign-on process, but it does not explain how, if at all, Williams has personal knowledge about the process or, for that matter, CreditWorks.

For his part, Austin disputed virtually all that was in the Williams Affidavit. (DECLARATION OF DARRELL J. AUSTIN, JR. IN SUPPORT OF PLAINTIFF'S OPPOSITION TO EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION, ECF No. 107-2). In particular, Austin explained that, after seeing an advertisement for how to get a supposedly free credit report from Experian, he sought to obtain it online on what he understood to have been an Experian website. (ECF No. 107-2, ¶ 7) To do so, he clicked a check box. It was only after this case started that Austin learned that the check had taken him to another company's website. (ECF No. 107-2, ¶ 6) Austin averred that he never saw the language that Williams says constituted an

agreement to arbitrate or the Terms of Use attached to the Williams Affidavit.   (ECF No. 107-2,   ¶ 9 and ¶ 10) Additionally, Austin averred that:

> Before filing this case against Experian, I was not aware of companies named 'Experian CreditWorks,' 'CreditWorks,' or 'Consumer-Info.com.'
>
> I have never paid or agreed to pay Experian, Experian CreditWorks, CreditWorks, or ConsumerInfo.com any money in exchange for access to my credit report or for any other services from these companies.
>
> When I went to the website Experian is claiming I used, I did not intend to sign up for any services other than the ability to see my credit report for free.  I have never used any of the other services that my lawyer has told me were supposedly available.

(ECF No. 107-2, ¶¶ 23, 24 and 26)

Because of the factual dispute over whether there exists an agreement to arbitrate, and because of the ambiguous and confusing contents of the Williams Affidavit, the Court authorized discovery on the Williams Affidavit and on how the computer click wrap[2] that is central to the Williams Affidavit actually operated.   (ECF No. 44)   That discovery was important to the ability to determine whether there was mutual assent to arbitrate.

---

[2] The Court is informed that "click wrap" is the mechanism by which Austin is alleged to have given assent to arbitrate when he thought that he was securing a free credit report.

7

However, when discovery for the MOTION TO COMPEL began, difficulties between the parties arose. Austin started the process, but Experian disagreed about the nature and scope of Austin's interrogatories and requests for production. At the same time, Austin claimed that Experian was overly argumentative and was inappropriately withholding discovery materials (see ECF Nos. 72, 74, 75, 77, 81, 86). In fact, Austin claimed on March 23, 2023 that Experian had objected to virtually all of Austin's discovery requests related to the mutual assent dispute. ECF No. 74 at 1. And, indeed, Austin's complaint turned out to be accurate.

Several of Austin's interrogatories and other discovery requests pertained to the assertions in the Williams Affidavit that Williams had personal knowledge of the matters to which he had averred. Austin claimed that Experian failed to produce any evidence of Williams' day-to-day responsibilities, and that the failure to do so tended to establish a lack of the personal knowledge that is required by Rule 56. E.g., ECF No. 74 at 2. After several conference calls with the parties, the Court overruled Experian's discovery objections but also ordered Austin to file more specifically tailored discovery requests. ORDER, March 24, 2023 (ECF No. 76).

After further meetings and conferrals, though, the parties' discovery disputes continued. The parties agreed to, and the

Court ordered, a Supplemental Scheduling Order (ECF No. 94) on April 18, 2023. Under that order, the parties were to conclude discovery by May 26, 2023 so that the Court could hold an evidentiary hearing in June to hear evidence on Williams' claim of personal knowledge and the issue of mutual assent. But, it became necessary to continue that hearing generally because the parties required even more conference calls and Court assistance in resolving their discovery disputes, principally those directed to Williams' alleged personal knowledge, but all those directed to the actual operation of the online system of which Williams claimed to have personal knowledge.

Asserting that Experian's discovery on those points was insufficient to support Williams' asserted personal knowledge or to permit a meaningful evidentiary hearing, Austin filed an OBJECTION TO AND MOTION TO EXCLUDE THE WILLIAMS DECLARATION (ECF No. 105). In the memorandum in support of that motion, Austin explained that the Williams Affidavit was not based on Williams' personal knowledge as required by the rules applicable to summary judgment. (ECF No. 106 at 5-12) Nor was it based on identifiable, admissible, or non-hearsay documents, he alleged. Id. Austin further contended that, although he had repeatedly requested it in discovery, Experian had provided no foundational or other evidentiary support for the statements Williams made in the Williams Affidavit. Id. at 12-18.

9

Experian, on the other hand, argued that the Affidavit was sufficient on its face, was not grounded in hearsay, and did not need to be supported by any discovery. (ECF No. 110 at 15-20) It also argued that, because many other courts had allowed and used similar affidavits from Williams, this Court should too. Id. at 20-21.

After a hearing on August 8, 2023, the Court granted Austin's MOTION TO EXCLUDE DECLARATION OF DAVID WILLIAMS (ECF No. 105). ORDER of August 11, 2023 (ECF No. 138). The Court held that, as required by Fed. R. Civ. P. 56(c)(4), the Williams Affidavit must be based on personal knowledge and must be based on evidence that would be admissible in evidence. Transcript of Proceedings of August 8, 2023 ("Hearing Transcript") at 73 (ECF No. 139). It also held that similar to the standard for summary judgment, it was Experian's burden to prove that there was actually an agreement to arbitrate established by mutual assent. Id. at 72-74. Then, the Court found that Experian had failed to carry that burden with respect to the Affidavit.

First, Williams' job description was too ambiguous to present a finding that Williams had personal knowledge of the averments in the Williams Affidavit. The description of Williams' role in CIC, the company for which he worked, was not plausibly probative of a personal awareness of "the details of the activity that lies at the heart of the issue involving the

alleged agreement to arbitrate . . . ." Id. at 75-76. In other words, Williams' actual job description in CIC did not permit a finding that he had personal knowledge of the CreditWorks sign-on process. And the defense failed to provide any further detail on that point during discovery. Id. at 80-81.

Second, Williams failed to identify the documents on which he based his asserted personal knowledge. He did not identify them in the Williams Affidavit itself, nor did the defense provide them or even identify their existence when requested to in discovery. Id. at 77-79. In fact, when probed further on this issue, the defense's interrogatory responses cut against Williams' personal knowledge of the arbitration process, in general and as applied to Austin. Id. at 80-83.

Third, the exhibits attached to the Williams Affidavit were hearsay. Id. at 84. So, it was Experian's burden to show they would be admissible into evidence. Id. Experian failed to carry that burden. Id. The Court found unpersuasive Experian's reliance on other cases where similar affidavits were not excluded, holding them to be factually distinct and inapplicable here. Id. And, the answers to interrogatories that the defense supplied later in discovery could not retroactively rehabilitate the evidentiary faults in the Williams Affidavit. Id. at 85-86.

After the Williams Affidavit was excluded, the Motion was left without any foundation. Experian asked to supplement the

MOTION TO COMPEL "with the evidentiary record that the Plaintiff insisted we produce in this case." Id. at 88.  Because Austin objected to Experian's rather unusual proposal, Experian was directed to file a "proper motion" explaining what Experian wanted to do so that Austin could present his objection and the issue (whether Experian could have leave to supplement the MOTION TO COMPEL) could be fully briefed for decision.  Id. In particular, Experian was permitted to file a Motion for Leave to file supplemental evidence in support of the Motion.

However, Experian's counsel also had suggested that such a motion might not be filed.  Therefore, Experian was instructed to file a Notice that it would not file a motion for leave if that was the course it elected. Id. at 88; ORDER of August 11, 2023 (ECF No. 138).

On August 25, 2023, Experian provided notice that it did not intend to further supplement the record on the MOTION TO COMPEL. (ECF No. 142)   In that Notice, Experian argued that it already had supplied enough evidence, both in discovery and as exhibits to its MEMORANDUM OF LAW IN SUPPORT OF EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION TO COMPEL ARBITRATION (ECF No. 39), from which the Court could make its determination. Id. at 1. Although Experian argued that the Court was legally required to consider discovery materials and other filings at this procedural posture, id. at 2-6, Experian made no specific

12

citations to any of the purported "evidence in the record or discovery," which spanned over 800 pages. Experian did not identify what documents Williams claimed to have relied on to have the personal knowledge that he claimed to have in paragraph 1 of the Williams Affidavit.

Experian was informed that the Court would not rule on that basis. During a conference call, the Court first expressed doubt about whether it was appropriate to incorporate by reference evidence and exhibits from the briefs on Austin's Motion to Exclude the Williams Affidavit in assessing the briefs on the MOTION TO COMPEL. Transcript of Proceedings of August 29, 2023 (ECF No. 143 at 7-8). But regardless, Experian's counsel was told that the Court would not comb through over 800 pages of discovery and exhibits in an effort to discern what was probative of Experian's argument that Williams had the personal knowledge that he claimed to have, or that supported Experian's contention that Austin had indeed agreed to arbitration as Williams claimed. Id. at 6.

For that reason, and because the record in general had become obfuscated and confusing, Experian was ordered to file a replacement memorandum in support of the MOTION TO COMPEL, which did not incorporate by reference any previously filed briefs, and which did not require the Court to search through the 800 confusing documents that contained unidentified evidence that

Williams had this requisite personal knowledge. ORDER of August 31, 2023 (ECF No. 144). In other words, the process was to start afresh.

Experian filed a replacement memorandum on September 7, 2023 (ECF No. 146). However, Experian put quotes around the word "replacement" and the memorandum that it filed was nearly identical to the original memorandum in support Experian filed in February, 2023.[3] (ECF No. 146 at 1) The "replacement" provided no new support and relied entirely, once again, on the now-excluded Williams Affidavit. Id. Experian contended that, "on this record, [the August 31 Order, ECF No. 144] conclusively foreclose[d] [Experian's] ability to establish an agreement to arbitrate . . . ." Id. Experian indicated that its sole aim in filing the "replacement" was to comply with the ORDER and to preserve the record for appeal. Id. n.2. Accordingly, Experian took the view that the Court must deny the MOTION TO COMPEL and, indeed, asked the Court to do so. Id.

---

[3] Rather than make any substantive changes, Experian mostly just added examples of legal authority (some having been decided since it filed its initial memorandum in support) bolstering its previously made arguments. These arguments included the assertion that other courts had accepted similar affidavits in other cases and that counsel for the plaintiffs in this case failed to oppose similar motions to compel arbitration in other cases in which Austin's counsel were litigating with Experian. See ECF No. 146 at 2-3, 3 n.3, 4, 9, 10, 13, 15, 17, 18.

## DISCUSSION

### I. Legal Standard

The Federal Arbitration Act provides that "[a] written provision in . . . a contract . . . to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "Upon petition of a party to an arbitration agreement, a district court may compel arbitration to enforce the parties' agreement to arbitrate their disputes." Muriithi v. Shuttle Exp., Inc., 712 F.3d 173, 178 (4th Cir. 2013).

Although the Supreme Court of the United States has endorsed a "liberal federal policy favoring arbitration," AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011), more recently, the Supreme Court has explained that "the federal policy is about treating arbitration contracts like all others, not about fostering arbitration." Morgan v. Sundance, Inc., 569 U.S. 411, 412 (2022). In other words, "the policy is to make 'arbitration agreements as enforceable as other contracts, but not more so.'" Id. at 418 (quoting Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 n.12 (1967)).

As is so with other contracts, a "party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." Levin v. Alms & Assocs., Inc., 634 F.3d 260, 266 (4th Cir. 2011). In the first place, "[w]hether an agreement to arbitrate was formed is . . . a question of ordinary state contract law principles." Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC, 993 F.3d 253, 258 (4th Cir. 2021) (citing Chorley Enters., Inc. v. Dickey's Barbecue Rests., Inc., 807 F.3d 552, 563 (4th Cir. 2015)). And, when parties disagree about whether an arbitration agreement has been formed, "the dispute is generally for courts to decide," not arbitrators. Granite Rock Co. v. Int'l Brotherhood of Teamsters, 561 U.S. 287, 296 (2010).

In applying relevant state law to decide whether the agreement was formed, "the district court must employ the summary judgment standard as a gatekeeper, so [an arbitration is not compelled] only if there are 'genuine issues of material fact'" as to whether the parties contracted to arbitrate. Rowland, 993 F.3d at 258 (quoting Chorley, 807 F.3d at 564 ("This standard is akin to the burden on summary judgment.")).

In meeting that summary judgment standard, the movant bears the burden of proof. Fed R. Civ. Pro. 56(a). So, "the burden is on the defendant to 'establish[] the existence of a binding contract to arbitrate the dispute.'" Rowland, 993 F.3d at 258

(quoting <u>Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co., Inc.</u>, 867 F.3d 449, 456 (4th Cir. 2017)); <u>see also</u> <u>Lovelady v. Five Star Quality Care-VA, LLC</u>, No. 4:18-cv-18, 2018 WL 3580768, at *7 (E.D. Va. July 25, 2018) ("The party seeking to compel arbitration bears the burden of establishing the existence of an arbitration provision that purports to cover the dispute.").

Here, the parties disagree on whether the formation of the arbitration agreement (i.e., whether Austin agreed to the Terms of Use) is governed by Virginia or North Carolina contract law.[4] "Questions concerning the validity, effect, and interpretation of a contract are resolved according to the law of the state where the contract was made." <u>Seabulk Offshore, Ltd. v. Am. Home Assurance Co.</u>, 377 F.3d 408, 419 (4th Cir. 2004) (citing <u>Woodson v. Celina Mut. Ins. Co.</u>, 211 Va. 423, 426 (1970)). Under Virginia law, "whether there existed between the parties an enforceable agreement to arbitrate . . . depends on whether the [agreement] contained the essential elements of a valid contract at common law." <u>Phillips v. Mazyck</u>, 273 Va. 630, 635 (2007). And "[i]t is elementary that mutuality of assent--the meeting of the

---

[4] Experian cites Virginia law on this point without actually addressing which law applies. ECF No. 146 at 8. In response, Austin asserts that, in 2020, at the time when Experian alleges the contract was formed, he lived in North Carolina, and that therefore North Carolina law should apply. ECF No. 148 at 8 n.4. Experian did not respond to this point in its reply. <u>See</u> ECF No. 149.

minds of the parties--is an essential element of all contracts." Id. at 636 (quoting Lacey v. Cardwell, 216 Va. 212, 223 (1975)). In North Carolina, "a valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms." Register v. Wrightsville Health Holdings, LLC, 843 S.E.2d 464, 470 (N.C. App. 2020) (quoting Charlotte Motor Speedway, LLC v. Cnty. Of Cabarrus, 748 S.E.2d 171, 176 (N.C. App. 2013). "Arbitration will not be compelled in the absence of such a showing." Id. (citing Routh v. Snap-On Tools Corp., 423 S.E.2d 791, 794 (N.C. App. 1992)). Under either state's standard, therefore, mutual assent is required to enforce an arbitration agreement. So, it is not necessary to decide which state's law applies, because in either scenario, Experian fails to prove this element.

## II. Analysis

### a. *Experian Has Provided No Foundation For Its Motion*

The bottom line here is that Experian has not met its burden. When Experian first filed the MOTION TO COMPEL, it relied entirely on the Williams Affidavit to show the existence of mutual assent to arbitrate. That evidence was excluded. Experian was given the opportunity to file a replacement memorandum in support of the MOTION TO COMPEL with additional evidence. But Experian declined to do so, indicating its intent to appeal the Court's denial of the MOTION TO COMPEL on the basis of excluding the Williams Affidavit. And, Austin has

provided an affidavit that, if believed, shows an absence of mutual assent to an agreement to arbitrate. Therefore, Experian's MOTION TO COMPEL must be denied because it lacks sufficient evidence to provide that Austin agreed to the arbitration agreement on which Experian relies.

Experian's position is quite strange on the simple issue to be resolved. Austin says, under oath, that he did not agree to arbitrate. To prove otherwise, Experian relies on an explanation purporting to show how it was that a person (such as Austin) trying to acquire the free credit report (promised on the website of Experian's related company) can use a website and, in so doing, can unknowingly agree to forego his right to proceed in court against Experian by agreeing to arbitrate with a third-party that was not even identified as Experian.

Experian chose to undertake that burden by relying on the Williams Affidavit. Having done so, Experian knew that the Williams Affidavit had to be based on personal knowledge. Fed. R. Civ. P. 56(a); 56(c)(4). But that requirement was not met. Nothing in Williams' job description disclosed personal knowledge of how the system at issue works. And, although Williams claimed to have personal knowledge based on a review of documents, those documents were not identified so that the Court could test the merits of the asserted personal knowledge claimed to be based on them.

And, although Williams swore that, "[i]f called upon to do so, I could and would competently testify to the facts stated below [his proffered explanation]," he explicitly declined the Court's request that he come to testify on those assertions and explain how it was that Austin set out to obtain a free credit report and ended up waiving his rights to go to court and instead to arbitrate.  The waiver on which Experian relies is a critically important waiver.  So, it is important that the exercise of judicial power to require arbitration (to enforce that waiver) be based on firm proof that Austin actually made the agreement to arbitrate.

Where, as here, that agreement appears buried in a long document, laden with legal jargon, that is accessed through a system that does not clearly explain what is actually happening, the Court has a duty to be sure that Austin was clearly informed of that to which he is claimed to have agreed and to be sure that his agreement was not procured by deceit. Where, as here, the undisputed record is that Austin thought he was applying for a free credit report but, instead, was actually put in a position of supposedly agreeing to arbitration, the process that produced that result must be examined carefully.  To do that, the Court needs a complete and understandable explanation of the system that produced that result by someone with the requisite personal knowledge.  Experian's obdurate refusal to produce that

evidence and, instead, to rely on the Williams Affidavit, simply does not permit the Court to find the mutual assent that is the legal prerequisite to an agreement to arbitrate.

Where, as here, Experian did not meet that burden initially and, indeed, turned down two invitations to do so after being told that it had failed on the first go round, the record teaches that Experian has not met its burden.[5] So, the MOTION TO COMPEL will be denied for that reason.

### b.  *Experian Fails Even If the Williams Affidavit Was Not Excluded*

Ordinarily, it is preferable to articulate a single basis for decision and, conversely, to refrain from making alternative holdings.  Karsten v. Kaiser Found. Health Plan of the Middle Atl. States, Inc., 36 F.3d 8, 11 (4th Cir. 1994).  However, because of the certainty of an appeal and the interest of judicial efficiency, it is preferable to resolve the substantive issue presented by the MOTION TO COMPEL.  And, to that, the analysis now turns.

This analysis must assume that the Williams Affidavit has not been excluded.  And, it then is necessary to turn to the

---

[5] Experian has a history of difficulty in complying with the FCRA (ECF No. 148, p. 5 and authorities cited there), it is passing strange that Experian would forego two opportunities to demonstrate that its system is transparent, rather than, as Austin claims, very deceptive.

substance of the Williams Affidavit to determine whether Experian has met its burden.  It has not.

The Williams Affidavit establishes that the process that it used lured consumers to a sister company's website for the purpose of allegedly receiving a free credit report.  And it was that process that produced the arbitration agreement of which Experian claims to be a beneficiary.  This is quite like the situation presented on the record in Sgouros v. TransUnion Corp., 817 F.3d 1029 (7th Cir. 2016).  There, the Seventh Circuit held that a click wrap agreement, including its arbitration agreement, could not be enforced.  A principle reason for that decision, as is the case here for Experian, was that Trans Union advertised the promise of a free credit report to lure consumers into binding arbitration terms.  In its analysis, the district court had held that it was not reasonable to believe that an average user would understand that by clicking, the consumer was agreeing to a service agreement which was both obscured and mislabeled.  Id. at 1036.  The same is true here.

In support of its conclusion on that point, the Seventh Circuit observed that the consumer could not be found to have mutually assented to the Trans Union contract.  There, the arbitration terms were within a horizontal window under the title "Service Agreement."  Id. at 1032.  And, to request his

22

free report, "Sgouros proceeded to step 3 by clicking on the 'I accept and continue to step 3.'" Id. at 1033. However, that button did not require him to first click on the scroll box or to scroll down to view the complete contents.  Nor did it in any other way call his attention to an arbitration agreement.  The arbitration agreement was actually "buried at page 8 of the full 10-page printable version of the Service Agreement."  Id.  The facts here are essentially the same as to the process relied on by Experian.

Further, the Seventh Circuit held that Trans Union's language following the link to the terms actually distracted the consumer by listing what appeared to be a summary of the terms or agreement about the website. Id. at 1036. The text, according to the Seventh Circuit, "said nothing about contractual terms." Id. at 1035. No reasonable person would think that hidden within that disclosure was also the message that the same click constituted acceptance of the service agreement.  Id.

Here, respecting the "create your account" button which the Williams Affidavit says is dispositive, Experian, as did Trans Union, follows this limited mention of the terms of use hyperlink with actual "terms" that any reasonable reader would assume summarized the referenced agreement. ECF No. 39-1. And, immediately before the click button, there is a statement that

the signer "authorizes consumerinfo.com . . . to obtain my credit report . . . to provide my credit report to me." Id.

That is very much like the text that the Seventh Circuit found confusing in Sgouros, and as the Seventh Circuit explained, "that text distracted the purchaser from the service agreement by informing him that clicking served a particular purpose unrelated to the agreement." Sgouros, 817 F.3d at 1036. The "create your account" button which is so-keyed to Williams' explanation does not state that it created an agreement to the terms and conditions of the contract. So, as in Sgouros, the disclosures that were made were deceptive. And that deception precludes a finding that there was a mutual assent to an arbitration agreement.

So, even if the MOTION TO COMPEL is considered on the basis of the Williams Affidavit, the record here discloses that, as in Sgouros, Experian's showing does not establish a meeting of the minds and the mutual assent required for there to be an agreement to arbitration.[6]

---

[6] The analysis might have been different if Experian had offered the testimony of someone with actual personal knowledge of the process that Austin was put through. Or, perhaps, if Williams could have shown personal knowledge, the analysis might be different. But, Experian made its choices on both scores and it must live with the consequences.

## CONCLUSION

For the foregoing reasons, DEFENDANT EXPERIAN INFORMATION SERVICES, INC.'S MOTION TO COMPEL ARBITRATION (ECF No. 38) will be denied.

It is so ORDERED.

/s/     *REP*
_____
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: December **13** , 2023